**In the Matter of Paul G. EVANS, Appellant.**

Nos. 80–838, 80–1434.

District of Columbia Court of Appeals.

Submitted Dec. 1, 1981.

Decided Aug. 26, 1982.

Paul G. Evans, appellant, pro se.

Peggy M. Tobolowsky, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty. at time brief was filed, John A. Terry and Mark J. Biros, Asst. U. S. Attys., Washington, D.C., on brief, for appellee.

Before PRYOR and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

The facts relevant to this appeal are as follows. On September 28, 1977, appellant, a member of the District of Columbia Bar, was held in contempt of court by the Honorable Sylvia Bacon and fined $500 for having failed on three separate occasions to appear for scheduled court appearances. In August 1978, Judge Bacon issued an order directing appellant to show cause why he should not be held in contempt for failing to pay the $500 fine. On appellant's motion, Judge Bacon then recused herself and the case was reassigned to Judge Braman. After a hearing on January 31, 1979, Judge Braman ruled that appellant was again in contempt and imposed a fine of $400 for failing to comply with the first contempt order. Both contempt convictions were appealed on grounds that they were obtained in violation of appellant's right to a jury trial and that the second conviction was tainted by the bias of the presiding judge in that proceeding. Appellant also argued that he should not have been held in contempt for failure to pay a fine when he had filed an application for a stay, and furthermore, that payment of the fine would have mooted his appeal.

Upon consideration of the appeals, this court ruled that appellant should have been afforded a jury trial in both contempt proceedings and that the second conviction was tainted by the bias of the presiding judge.

Accordingly, the second conviction was reversed and that case remanded for a new trial before a different judge. While the first conviction was affirmed, the fine of $500 was vacated and the case remanded with instructions to enter a new judgment with a fine of $300. *In re Evans,* D.C.App., 411 A.2d 984 (1980). Because the second conviction was reversed on the ground of judicial bias, appellant's mootness argument was not considered. *Id.* at 987 n.1.

On July 30, 1980, Judge Bacon, pursuant to this court's instructions, imposed the reduced fine of $300 for the first contempt conviction. After the remand, the second contempt charge was reassigned to the Honorable Joseph Hannon. In a Memorandum Opinion dated November 25, 1980, Judge Hannon took judicial notice of the prior contempt proceedings, found appellant in contempt for failing to pay the original fine, and imposed an additional fine of $250. This appeal followed.

Appellant again contends that he was not obligated to pay the fine imposed in the first contempt case because the order violated his right to a jury trial and further that compliance would have mooted his appeal. Appellant contends also that it was error for Judge Bacon, after recusing herself in the second contempt proceeding, to take the first contempt case back on remand for the purpose of imposing a reduced fine. Finally, appellant argues that since this court reversed appellant's second contempt conviction because of judicial bias, the Double Jeopardy Clause of the Fifth Amendment bars a retrial before a different judge. Having carefully reviewed each of these claims, we find no reversible error and affirm appellant's convictions of contempt.[1]

## I.

We address first appellant's contention that payment of the fine imposed for the first contempt would have rendered any

---

[1]. Appellant also argues that Judge Bacon was without jurisdiction when she imposed a fine in excess of $300. We rejected this contention in the disposition of appellant's first appeal and decline to reconsider it now. *In re Evans, supra,* 411 A.2d at 993 n.10.

appeal of the conviction moot. Based on the facts of this case, we conclude that mootness would not have barred appellant's appeal.

In *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968) the Supreme Court held "that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." This court used that standard in deciding *In re De Neueville,* D.C.App., 286 A.2d 225 (1972), a case factually distinguishable from the one at bar. In *De Neueville,* appellant was found in contempt for failing to stand when the judge entered the courtroom. The court held that there was no possibility of further penalties or legal disabilities after execution of the judgment of conviction and that, therefore, the appeal was moot. The court concluded that appellant could not be impeached with the conviction in a future judicial proceeding, nor would she be subject to increased punishment as a "second offender" in the event of another contempt conviction. *Id.* at 227–28.[2] Here, unlike in *De Neueville* and *Holley v. United States,* D.C.App., 442 A.2d 106 (1981), there were collateral legal consequences which would have precluded a mootness determination. In fact, there are several consequences which would accrue to any lawyer convicted of criminal contempt. As one court has stated:

> This conviction would be especially damaging if [the attorney] were ever again accused of being in contempt of court. Conviction for contempt of court could also have serious adverse career consequences for [the attorney]. His conviction could prove a basis for disciplinary action by a bar association. Opportunities for appointment to the bench or to other high office might be foreclosed as a result of this blot upon his record. The conviction might damage [the attorney's]

reputation in the legal community, and this in turn might affect his ability to attract clients and to represent them effectively, especially in open court. In light of these possible collateral consequences, [the attorney's] appeal is not 'abstract, feigned, or hypothetical' so as to justify dismissal for mootness." [*Keezel v. State,* 358 So.2d 247, 249 (Fla. Dist.Ct.App.1978), *quoting United States v. Schrimsher* (*In re Charles D. Butts, Attorney at Law*) 493 F.2d 842 (5th Cir. 1974) (citations omitted).]

*In Re Hunt,* D.C.App., 367 A.2d 155 (1976), *cert. denied,* 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977), this court allowed appellant, a member of the bar, to appeal a contempt conviction after he had paid a fine. The court held "that for a lawyer, the amount of the fine for contempt is of little consequence compared to the potential stigma flowing from a criminal record. It, for example, could hinder his admission to the bar of a foreign jurisdiction." *Id.* at 158. *See United States v. Camil,* 497 F.2d 225 (5th Cir. 1974). Any of the collateral consequences mentioned above could have accrued to appellant. Therefore, his right of appeal would not have been defeated by payment of the fine imposed following the first contempt conviction. In light of this determination, nonpayment of the first fine was a sufficient basis for appellant's second contempt conviction.

### II.

Appellant's second contention is that it was error for Judge Bacon, after first recusing herself, to take the case back on remand for the purpose of imposing a reduced fine. This argument is similarly without merit. Where a judge has recused himself or herself from a case, that judge would be precluded from performing a judicial act calling for the exercise of judicial discretion. However, as in the case at bar, where the judge's later participation in-

---

**2.** In a similar case, this court recently dismissed an appeal as moot where appellant had served his entire sentence and would "suffer no collateral legal consequences as a result of the execution of judgment." *Holley v. United States,* D.C.App., 442 A.2d 106 (1981). *Compare Smith v. Smith,* D.C.App., 427 A.2d 928, 931 n. 4 (1981) (appeal not moot although appellant had served full term of his contempt commitment).

volves no substantive rulings, but rather the performance of non-discretionary, ministerial duties, such participation is not prohibited. *See State v. Watkins,* 125 Ariz. 570, 575, 611 P.2d 923, 928 (1980); *People ex rel. Walker v. Pate,* 53 Ill.2d 485, 503, 292 N.E.2d 387, 398 (1973); 48A C.J.S. *Judges* § 156. Here, Judge Bacon took the case on remand solely to impose a fine which this court had specifically reduced from $500 to $300. Thus, the posture of the case did not require the court to exercise judicial discretion. Accordingly, no reversible error occurred.

## III.

 Finally, appellant argues that since the first conviction was reversed on grounds of judicial bias, a retrial of his second contempt conviction was barred by the Double Jeopardy Clause. Again, we disagree. It "is a well established part of our constitutional jurisprudence" that the Double Jeopardy Clause does not bar a second trial following reversal of a judgment of conviction. *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1588, 12 L.Ed.2d 448 (1964). *See United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328; *United States v. Scott,* 437 U.S. 82, 90–91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978); *United States v. Busic,* 639 F.2d 940, 945 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Opager,* 616 F.2d 231, 235 (5th Cir. 1980). The Supreme Court has described the purpose of the Double Jeopardy Clause as follows:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty. [*United States v. Scott, supra,* 437 U.S. at 87, 98 S.Ct. at 2191, *quoting Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).]

However, "to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *United States v. Scott, supra,* 437 U.S. at 91, 98 S.Ct. at 2193. An exception to this rule, not applicable to the case at bar, arises where the conviction is successfully appealed on the ground of insufficient evidence.[3] We hold, therefore, that it was not error to subject appellant to a second trial where this court reversed his conviction on the ground that the trial court was biased.

For the reasons stated above, appellant's contempt convictions are

*Affirmed.*

---

**3.** Recently in *Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the United States Supreme Court distinguished this exception from reversals based on the weight of the evidence, in which case the Double Jeopardy Clause does not bar a retrial.