211 N.J. Super. 421 (1986)
511 A.2d 1251
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS DEMARCO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1986.
Decided July 8, 1986.
*422 Before Judges ANTELL and SHEBELL.
Michael Critchley argued the cause for appellant (Critchley & Roche, attorneys; Michael Critchley, on the briefs).
Boris Moczula, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Jay Hindman, Deputy Attorney General, on the letter-brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant-appellant Thomas DeMarco was convicted by a jury of possessing gambling records (N.J.S.A. 2C:37-3) and was sentenced to three years of probation with the condition that he serve 60 days in the county jail and was fined $1,500.
At the first trial, defendant's motion for mistrial was granted because the prosecutor in his opening statement to the jury stated that his office had received "certain information with regard to gambling activity going on ..." Defendant's motion for dismissal on double jeopardy grounds was denied and a new trial commenced the next day resulting in defendant's conviction *423 on one count and acquittal on four others. Defendant appeals the judge's denial of his motion for dismissal.
In moving for a dismissal of the indictment on the grounds of double jeopardy at trial, defendant contended that the prosecutor intentionally referred to the hearsay in his opening statement even though he knew that he could not get the evidence in during the trial. The trial judge in denying defendant's motion stated he was satisfied the prosecutor did not intend to cause a mistrial.
The double jeopardy clause of the fifth amendment to the United States Constitution is applicable to the states through the fourteenth amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). This clause protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. United States v. Dinitz, 424 U.S. 600, 606, 96 S.Ct. 1075, 1078, 47 L.Ed.2d 267, 273 (1976).
When a mistrial has been declared over defendant's objection, a new trial is permitted under the double jeopardy clause only when the mistrial was required by manifest necessity and the ends of justice would have been defeated by allowing the trial to continue. Illinois v. Somerville, 410 U.S. 458, 459, 93 S.Ct. 1066, 1068, 35 L.Ed.2d 425, 428 (1973).
However, different principles apply when a mistrial has been declared at the defendant's request. Dinitz, 424 U.S. at 607, 96 S.Ct. at 1079, 47 L.Ed.2d at 273-274. In Dinitz the United States Supreme Court held that the double jeopardy clause protects a defendant against governmental actions that are intended to provoke mistrial requests and thereby subject defendant to the substantial burdens imposed by multiple prosecutions. 424 U.S. at 611, 96 S.Ct. at 1081, 47 L.Ed.2d at 276. The Court further held that the double jeopardy clause bars retrials where bad-faith conduct by the judge or prosecutor threatens the harassment of an accused by successive prosecutions or declarations of a mistrial so as to afford the prosecution *424 a more favorable opportunity to convict the defendant. Ibid.
In 1982 the United States Supreme Court narrowed the grounds upon which a new trial is barred. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The previous standard, which merely required "bad faith conduct" or "harassment" by the judge or prosecutor, was rejected because it offered virtually no standards for its application. Ibid. 456 U.S. at 674, 102 S.Ct. at 2088, 72 L.Ed. at 424. The Court decided that "only where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425. The Court limited the circumstances under which a defendant may invoke double jeopardy to "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." 456 U.S. at 679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427. The Court reasoned that criminal defendants as a class would not necessarily benefit from a broader standard:
Knowing that the granting of the defendant's motion for mistrial would all but inevitably bring with it an attempt to bar a second trial on grounds of double jeopardy, the judge presiding over the first trial might well be more loath to grant a defendant's motion for mistrial. If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial. But some of the advantages secured to him by the Double Jeopardy Clause  the freedom from extended anxiety, and the necessity to confront the government's case only once  would be to a large extent lost in the process of trial to verdict, reversal on appeal, and subsequent retrial. [456 U.S. at 676-677, 102 S.Ct. at 2089, 72 L.Ed.2d at 425-426; footnotes and citation omitted]
We are convinced that there is no basis for departing from the holding in Kennedy. We stated our position in State v. Andrial, 203 N.J. Super. 1 (App.Div. 1985) thus,
When a defendant successfully moves for a mistrial, he may invoke the bar of double jeopardy in a second effort to try him only when the prosecutorial *425 conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into making the motion. [Id. at 8].
Defendant argues that because Andrial has not been cited or adopted by the New Jersey Supreme Court its applicability in New Jersey is clouded.
Justice Brennan in his concurring opinion in Kennedy noted that state courts may conclude that a retrial violates a state constitution's double jeopardy provision even though a retrial does not violate the federal constitution's double jeopardy provision. 456 U.S. at 680-681, 102 S.Ct. at 2091, 72 L.Ed.2d at 428.
Art. I, ¶ 11 of the New Jersey Constitution provides: "No person shall, after acquittal, be tried for the same offense." The fifth amendment to the federal constitution states: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Although the fifth amendment is facially broader, our state clause has been held coextensive with the federal clause in application. State v. Rechtschaffer, 70 N.J. 395, 404 (1976). New Jersey courts have consistently applied double jeopardy principles which accord with the federal constitution because its language is broader than our state constitution's clause. State v. Barnes, 84 N.J. 362, 370 (1980). New Jersey's double jeopardy provision being facially narrower than the clause contained in the United States Constitution, State v. Jones, 188 N.J. Super. 201, 205-206 (App.Div. 1983), we conclude there is no basis for this court to give New Jersey's provision broader application.
Defendant cites State v. Phelps, 96 N.J. 500, 520 (1984) as evidence that New Jersey has not adopted the Kennedy standard. His reliance is misplaced. In Phelps the Court decided there was sufficient evidence of a conspiracy and of defendant's participation in that conspiracy, independent of the coconspirator's declarations, as to admit into evidence the typed statements of coconspirators. 96 N.J. at 520. In passing, the Court stated that if a mistrial is granted because of the prosecutor's misconduct, double jeopardy may prevent a retrial of defendant. Ibid. The Court then cited Rechtschaffer for the *426 proposition that defendant should not be subjected to the harassment of a second trial when the prosecutorial misbehavior or manipulation causes the mistrial. 96 N.J. at 520. Since the Court in Phelps held that admitting the statements was not error, it did not focus on what new trial standard to apply. It is not appropriate to rely on Phelps for the proposition that this state does not follow the double jeopardy standard set forth in Kennedy.
Defendant contends that even if the Kennedy standard governed this case the prosecutor's conduct intentionally goaded defendant into moving for a mistrial and that a retrial was barred on the grounds of double jeopardy. He points out that just prior to trial, the court heard oral argument concerning defendant's motion to have the identity of the informer disclosed, and that during argument, it was stated that if the State proceeded erroneously on a conspiracy charge and the court later perceived that it was improperly drawn, the State's case could be dismissed based on the Phelps holding. Defendant contended that since the court discussed the law during oral argument on defendant's motion to reveal the informant's identity, the prosecutor knew that the informant's hearsay was not admissible at trial.
A police officer may explain the reason he approached a suspect or went to the scene of a crime by stating that he did so "upon information received." State v. Bankston, 63 N.J. 263, 268 (1973). This testimony is admissible to show that the officer was not acting in an arbitrary manner. Ibid. However, when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused, the testimony violates the hearsay rule. Ibid.
In this case, the prosecutor's statement that his office received information concerning gambling activity was deemed improper and the judge granted defendant's motion for a mistrial based on the Bankston decision.
He also decided, pursuant to the Kennedy standard, that only where the prosecutor intends to goad defendant into moving for *427 a mistrial may defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first one on his own motion. In denying defendant's motion for dismissal the court held:
... I am satisfied that the Prosecutor did not intend to cause a mistrial, that I believe him when he says that it was his view that the reference to receiving gambling information was admissible, although I do not find it easy to believe that. It is possible that he may have been mistaken with respect to his understanding, with respect to reaching a proper understanding of the test as set forth in Bangston [sic]. Therefore, I'm satisfied that double jeopardy does not bar a second, a "Second" trial of this defendant, of these charges.
The court's finding that the prosecutor did not intentionally goad defendant into moving for a mistrial is supported by the record. While the prosecutor was aware of the Bankston decision he interpreted it differently than the court. The court's discussion of Phelps in oral argument prior to trial would not have assisted the prosecutor in his interpretation of Bankston.
Further, we find no evidence that the prosecutor had an incentive to abort the trial. We uphold the denial of the motion to dismiss.
Affirmed.