**Florencio COREAS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–118.**

District of Columbia Court of Appeals.

Argued Dec. 13, 1990.
Decided Feb. 5, 1991.

Daniel E. Ellenbogen, Washington, D.C., appointed by this court, for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth H. Danel-

lo, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN, BELSON and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Appellant Coreas was acquitted by a jury of second degree murder while armed,[1] but convicted of the lesser included offense of manslaughter while armed[2] and of carrying a pistol without a license.[3] On his first appeal, a divided panel of this court reversed his convictions, holding that prosecutorial misconduct had denied him a fair trial. *Coreas v. United States*, 565 A.2d 594 (D.C.1989) (*Coreas I*). The court held that although no objection had been made to the prosecutor's improper rebuttal argument until the second day of jury deliberations, "the cumulative effect of the prosecutorial misconduct [had] jeopardized the very fairness and integrity of the trial." *Id.* at 606. At the conclusion of the majority opinion, the court wrote *"Reversed"*, but did not specify what, if any, further proceedings should follow.[4]

Seeking to prevent his retrial, Coreas filed a motion in the trial court asking that the prosecution be dismissed. He contended, among other things, that retrial would subject him to double jeopardy. The trial judge denied the motion.

Coreas has filed a second appeal,[5] and now contends that the Double Jeopardy Clause precludes a second trial because the prosecutorial misconduct which led to the reversal of his conviction rose to the level of plain error, and that he cannot be retried for manslaughter, in light of his acquittal of second degree murder, unless the government obtains a new indictment. We affirm.

■ The government maintains that on the present record, a new trial would not implicate double jeopardy concerns. We agree.

■ "The general rule is that jeopardy does not fully terminate, and retrial may occur, with respect to a crime for which a person was originally convicted, notwithstanding reversal of that conviction on appeal." *Lucas v. United States*, 522 A.2d 876, 879 (D.C.1987); *accord, Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 289–90, 102 L.Ed.2d 265 (1988); *Thomas v. United States*, 557 A.2d 599, 601 (D.C. 1989) (per curiam) (en banc). There is an exception to this general rule where a conviction has been reversed due to insufficiency of the evidence for, where this occurs, the defendant ought to have been acquitted, and the Double Jeopardy Clause "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). The Court explained in *Burks*, however, that

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g., ... prosecutorial misconduct.* When this occurs, the accused has a strong interest in obtaining a fair adjudication of his guilt free from error, just as

---

1. D.C.Code §§ 22–2403, –3202 (1989).

2. D.C.Code §§ 22–2405, –3202 (1989).

3. D.C.Code § 22–3204 (1989).

4. In the trial court, Coreas contended that retrial was impermissible because it was not authorized by this court's mandate. He has not pursued the point on appeal. Since this court did not order dismissal of the charges with prejudice, the mandate provided no obstacle to

retrial. *See, e.g., Fletcher v. United States*, 524 A.2d 40, 45 (D.C.1987); *Fletcher v. United States*, 569 A.2d 597 (D.C.1990).

5. This is an interlocutory "double jeopardy" appeal. *See Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Pennington v. United States*, 471 A.2d 250, 252 (D.C. 1983).

society maintains a valid concern for insuring that the guilty are punished.

*Id.* at 15, 98 S.Ct. at 2149 (emphasis added); *see also Lockhart, supra,* 488 U.S. at 38–42, 109 S.Ct. at 289–92.

In the present case, the reversal of Coreas' convictions was not based on evidentiary insufficiency. Indeed, the court explicitly rejected Coreas' contention that the evidence was insufficient to support the jury's verdict. *See Coreas I, supra,* 565 A.2d at 596 n. 2. Rather, the reversal was based on prosecutorial misconduct, and was unrelated to Coreas' guilt or innocence. Accordingly, the government is not precluded from retrying Coreas on the charges of voluntary manslaughter while armed and carrying a pistol without a license.

■ Coreas argues, however, that retrial is barred by *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), or at least by what he maintains would be a reasonable extension of the doctrine of that case. In *Kennedy,* the Court addressed the question whether the Double Jeopardy Clause proscribes a respondent's retrial after his first trial has ended in a mistrial granted on his own motion. The Court reiterated the general principle that the reversal at the defendant's behest of a criminal conviction does not ordinarily implicate the Double Jeopardy Clause or preclude retrial, and that a mistrial granted upon the defendant's motion likewise leaves the prosecutor free to retry the defendant. *Id.* at 671–73, 102 S.Ct. at 2087–88. Recognizing that a criminal defendant has a "valued right to have his trial completed by a particular tribunal", *id.* at 671–72, 102 S.Ct. at 2087 (citation omitted), however, the Court recognized a narrow exception to the general rule and explained that "where the governmental conduct … is intended to 'goad' the defendant into moving for a mistrial a defendant [may] raise

the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. at 2089. The Court added that

the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679, 102 S.Ct. at 2091. The trial court having found that the prosecutor had not attempted to provoke a motion for a mistrial, and the Oregon appellate courts having upheld that finding, the Supreme Court held that Kennedy's conviction could stand.

The passage from *Kennedy* quoted above addresses the double jeopardy implications of the prosecutor's goading of the defendant into a *successful* motion for a mistrial; in the present case, Coreas' belated motion was denied. Some courts have suggested that the *Kennedy* doctrine should also apply where a motion for a mistrial has been wrongfully denied, but where the appellant's conviction is subsequently reversed on appeal as a result of prosecutorial misconduct which was intended to goad the appellant into requesting a mistrial. *See, e.g., United States v. Curtis,* 683 F.2d 769, 774 (3d Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982); *cf. Robinson v. Wade,* 686 F.2d 298, 307–09 (5th Cir.1982). But even if we were to extend *Kennedy* to an *unsuccessful* motion for a mistrial, Coreas could derive no succor from such a holding. To avail himself of the *Kennedy* doctrine, Coreas must indisputably show that the defense was goaded by prosecutorial misconduct into requesting abandonment of the trial.[6]

Although no evidentiary hearing[7] was held on Coreas' motion, Judge Goodrich[8]

---

6. Coreas relies on a trial court decision from New York, *People v. Cavallerio,* 104 Misc.2d 436, 428 N.Y.S.2d 585 (1980), for the proposition that prosecutorial misconduct necessitating reversal may be equivalent for double jeopardy purposes to goading the defense into requesting a mistrial. That decision predated *Kennedy,* however, and is inconsistent with it.

7. Coreas did not request that one be held.

8. Judge Goodrich also presided over Coreas' trial and thus, had the opportunity to observe the prosecutor's demeanor throughout the proceedings and assess the strength of the government's case.

reviewed each instance of prosecutorial misconduct and explicitly found that "the government did not intentionally provoke a mistrial or the reversal which resulted instead." The judge's findings may be set aside only if "clearly erroneous". *Fletcher v. United States,* 569 A.2d 597, 598 (D.C. 1990). Coreas offered no contrary evidence, and we have no basis for disputing a finding by the judge who was "on the spot" and in the best position to discern the prosecutor's intent.

The Court explained in *Kennedy* that a showing of prosecutorial misconduct such as "harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor *to subvert the protections afforded by the Double Jeopardy Clause.*" 456 U.S. at 675–76, 102 S.Ct. at 2089 (emphasis added). No such intent having been demonstrated, Coreas' double jeopardy argument must fail. Apparently recognizing that the decision in *Kennedy* is too narrow to help him, Coreas invites our attention to criticisms of that decision in the legal literature.[9] We are, however, bound by the Supreme Court's construction of the Double Jeopardy Clause and therefore hold that a new trial of Coreas is not barred by that provision.

Coreas also maintains that because he was acquitted of the second degree murder charge contained in the original indictment, he cannot be retried based on that indictment. He maintains that retrial would subject him "to potential conviction for the very offense for which he has been acquitted." The government, however, concedes, as it must, *see Price v. Georgia,* 398 U.S. 323, 327, 90 S.Ct. 1757, 1760, 26 L.Ed.2d 300 (1970), that in light of Coreas' acquittal of the murder charge, he may be retried only for voluntary manslaughter while armed and for carrying a pistol without a license, not for murder. Coreas is

therefore not in jeopardy of a second trial for the only offense of which he has been acquitted, namely, second degree murder while armed.

Coreas asserts that he cannot be tried for voluntary manslaughter while armed because he has never been indicted for that offense. The only indictment pending against him, he maintains, charges him with second degree murder while armed and carrying a pistol without a license. Having been found not guilty of second degree murder while armed, Coreas contends that he cannot be tried on an indictment charging him with a crime of which he has previously been acquitted.

We think Coreas' argument is more one of form than of substance. It is undisputed that voluntary manslaughter while armed is a lesser-included offense of second degree murder while armed. *See Comber v. United States,* 584 A.2d 26, 42 (D.C. 1990) (en banc); CRIMINAL JURY INSTRUCTIONS OF THE DISTRICT OF COLUMBIA NO. 4.23, at 178 (3d ed. 1978). Indeed, the jury in *Coreas I* found him guilty of that lesser-included offense. Accordingly, the grand jury which indicted him for the greater offense necessarily found probable cause to believe that all of the elements of the lesser offense of manslaughter while armed were present. Neither the reversal of Coreas' conviction as a result of prosecutorial misconduct nor his acquittal of second degree murder while armed has any logical bearing on the grand jury's conclusion that Coreas' conduct satisfied all of the elements of voluntary manslaughter while armed, and more. A new indictment is therefore not required.

In *Edmonds v. United States,* 106 U.S.App.D.C. 373, 273 F.2d 108 (1959), *cert. denied,* 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960), the defendant was originally tried for first degree murder, the offense explicitly charged in the indictment, but was found guilty of the lesser

---

9. Coreas also argues that Justice (now Chief Justice) Rehnquist's opinion for the Court was a plurality opinion only. Although one member of the five-Justice majority, Justice Powell,

wrote a separate concurrence, 456 U.S. at 679–80, 102 S.Ct. at 2091–92, he also joined the majority opinion. *Id.* at 668, 679, 102 S.Ct. at 2085–86, 2091.

included offense of second degree murder, an offense not charged in the indictment. *Id.* at 374, 273 F.2d at 109. His conviction was reversed on appeal, and he was retried for and convicted of second degree murder under the first degree count of the original indictment. Edmonds appealed once more, claiming that his retrial violated the Double Jeopardy Clause because he was twice put in jeopardy for the same offense. *Id.* at 378, 273 F.2d at 113. Rejecting this argument, the court concluded that while Edmonds could not be retried for first degree murder, the Double Jeopardy Clause did not preclude his retrial for second degree murder under the first degree count of the original indictment. The court explained that "on remand after reversal, Edmonds was ordered to stand trial for second degree murder [only and] ... he was tried for that offense only. In these circumstances, we reject the argument that he has been subjected to double jeopardy." *Id.* at 378–79, 273 F.2d at 113–114.[10]

■ Coreas relies on *People v. Mayo*, 48 N.Y.2d 245, 422 N.Y.S.2d 361, 397 N.E.2d 1166 (1979), in which the New York Court of Appeals held that the defendant's retrial for first degree (or armed) robbery (the offense charged in the original indictment), following an acquittal of that offense at his first trial, violated the Double Jeopardy Clause and invalidated his conviction at the second trial of second degree (unarmed) robbery. That case is, however, distinguishable from this one in a critical respect. The jurors at Mayo's second trial were advised that the defendant had been indicted for first degree robbery. The case was thus tried almost to completion under the shadow of the first degree robbery indictment. It was not until the conclusion of the second trial that the judge ruled that the first degree robbery charge of which Mayo had been found not guilty was not properly before the jury, and instructed the jurors that they should consider the defendant's guilt or innocence only of the lesser included offense of (unarmed) robbery. *Id.* at 250, 422 N.Y.S.2d at 363, 397 N.E.2d at 1168. The jury then found the defendant guilty of second degree (unarmed) robbery. The Court of Appeals reversed Mayo's conviction, observing that although the first degree robbery count had been withdrawn from the jury before it began its deliberations, this "did not ensure that the verdict was not in some way influenced by the looming presence of the charge throughout the trial." *Id.* at 252, 422 N.Y.S.2d at 365, 397 N.E.2d at 1170.[11]

In the present case, it is undisputed that Coreas may be retried only for voluntary manslaughter while armed and for carrying a pistol without a license. The judge at a new trial can readily dispose of the prob-

---

**10.** The *Edmonds* decision did not explicitly address any issue relating to the need or lack thereof for a new indictment, but treated the original indictment as sufficient.

Although not so identified in his brief, Coreas' argument with respect to the lack of a manslaughter indictment appears to implicate the right of the accused under the Fifth Amendment not to be tried for an infamous crime "unless on a presentment or indictment of a Grand Jury", rather than the double jeopardy protections of the same Amendment. Any claim which, when correctly analyzed, invokes the Grand Jury Clause of the Fifth Amendment rather than the Double Jeopardy Clause, is not properly before us on an interlocutory *"Abney"* appeal. *See United States v. MacDonald,* 435 U.S. 850, 857 n. 6, 98 S.Ct. 1547, 1551 n. 6, 56 L.Ed.2d 18 (1978) ("a federal court of appeals is without pendent jurisdiction over otherwise nonappealable claims even though they are joined with a double jeopardy claim over which the appellate court does have interlocutory appellate jurisdiction").

**11.** The court also stated in *Mayo* that
the People did not choose to limit the charges in the second proceeding to the permissible counts of second and third degree robbery. Instead, they opted to proceed under the original indictment, thereby placing defendant once again at risk of being convicted of first degree robbery, a crime of which he had previously been, in effect, acquitted. It is precisely this type of imposition that the double jeopardy clause of the Fifth Amendment was calculated to prevent.
*Id.* 48 N.Y.2d at 251, 422 N.Y.S.2d at 364, 397 N.E.2d at 1169.
There is concededly language in *Mayo* suggesting that a new indictment would be required before Mayo could be brought to trial for second or third degree robbery. The court never had occasion, however, to address the adequacy of the procedure which we direct the trial court to follow. See text, *infra* at 1381–1382.

**1382**

lem presented by *Mayo* by avoiding any reference to the original charge of second degree murder while armed and simply advising the jury that the defendant is on trial for the two offenses mentioned above. Although it is customary in the trial court to read or summarize the indictment to the jury, *see* CRIMINAL JURY INSTRUCTIONS OF THE DISTRICT OF COLUMBIA, *supra,* No. 1.02, at 4, this procedure has no talismanic indispensability. In the present circumstances, the remaining charges can be summarized just as well. Under that procedure, no double jeopardy problem will be presented, and the jury's deliberations will not be compromised by any allusions to a charge of which Coreas has been acquitted.

Accordingly, the order appealed from must be and it is hereby

*Affirmed.*